

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00012-CV
_____

IN THE MATTER OF THE MARRIAGE OF
AMBER BROOKS AND MATTHEW JUSTIN BROOKS
AND IN THE INTEREST OF A.B., L.B., AND E.B., CHILDREN

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 17D1415-CCL

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

Amber Brooks and Matthew Justin Brooks were divorced in 2018. The agreed divorce decree appointed Amber and Matthew joint managing conservators of their three sons, A.B., L.B., and E.B., with Amber having the right to designate the children's primary residence. In 2022, Amber filed a petition to modify the parent-child relationship so that she could move with the children to Maine. After finding a substantial and material change in the parties' circumstances, the trial court modified the agreed divorce decree by allowing Amber to relocate the children and by altering the dates for Matthew's possession of and access to the children.[1]

On appeal, Matthew argues that the trial court abused its direction in allowing Amber to relocate the children to Maine because (1) there was no substantial or material change in the parties' circumstances and (2) relocation was not in the children's best interests. Because we find that sufficient evidence showed a substantial and material change in the parties' circumstances and that relocation was in the children's best interests, we affirm the trial court's judgment.

## I. Standard of Review

"We review the trial court's decision to modify conservatorship under an abuse of discretion standard." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *Id.* (quoting *In re Jeffries*, 144 S.W.3d 636, 638 (Tex.

---

[1]Amber also sought, and the trial court ordered, child support from Matthew in the amount of $1,288.40 per month. Matthew does not complain of the order to pay child support.

App.—Texarkana 2004, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985))). "Under this standard, legal and factual sufficiency are not independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion." *Id.* (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.); *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.—Texarkana 2000, no pet.)). "In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion." *Id.* (citing *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.)).

Since Matthew did not have the burden of proof at trial, legal sufficiency is analyzed as a no-evidence challenge. *See In re A.B.O.*, No. 06-14-00071-CV, 2015 WL 2236593, at *6 (Tex. App.—Texarkana 2015, no pet.) (mem. op.) (citing *Giron v. Gonzalez*, 247 S.W.3d 302, 306 (Tex. App.—El Paso 2007, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983))). "In assessing factual sufficiency, we are to consider all of the record evidence, not just the evidence supporting the judgment." *Id.* (quoting *In re G.R.W.*, 191 S.W.3d 896, 899 (Tex. App.—Texarkana 2006, no pet.) (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998))). The trial court's findings are set aside "only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, shock the conscience, or clearly demonstrate bias." *Id.* (quoting *In re C.R.J.*, No. 06-13-00053-CV, 2014 WL 199209, at *5 (Tex. App.—Texarkana Jan. 17, 2014, no pet.) (mem. op.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam))).

3

As the fact-finder in a bench trial, the trial court determines "the credibility of the witnesses and the weight [of] their testimony." *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). As "sole arbiter of a witness' demeanor and credibility," the trial court "may believe all, part, or none of a witness' testimony." *In re E.M.*, No. 06-17-00083-CV, 2017 WL 5586633, at *2 (Tex. App.—Texarkana Nov. 21, 2017, no pet.) (mem. op.) (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "Where, as here, no findings of fact and conclusions of law are filed, it is 'implied that the trial court made all the findings necessary to support its judgment.'" *In re P.M.G.*, 405 S.W.3d at 410 (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).

## II. Sufficient Evidence Showed a Substantial and Material Change in the Parties' Circumstances

"A court with continuing, exclusive jurisdiction may modify an order that provides for the conservatorship, support, or possession of and access to a child." TEX. FAM. CODE ANN. § 156.001. In relevant part, Section 156.101 states,

(a)     The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:

(1)     the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:

(A)     the date of the rendition of the order; or

(B)     the date of the signing of a mediated or collaborative law settlement agreement on which the order is based . . . .

4

TEX. FAM. CODE ANN. § 156.101(a). Matthew argues that the Department failed to establish a material and substantial change in the parties' circumstances. We disagree.

"A court's determination of whether a material and substantial change of circumstances has occurred is not based on rigid rules and is fact-specific." *In re T.I.*, No. 06-20-00089-CV, 2021 WL 3669339, at *5 (Tex. App.—Texarkana Aug. 19, 2021, no pet.) (mem. op.) (citing *In re A.J.M.*, No. 10-14-00284-CV, 2016 WL 936869, at *2 (Tex. App.—Waco Mar. 10, 2016, no pet.) (mem. op.)). "Material changes may be established by either direct or circumstantial evidence." *Id.* (citing *In re A.J.M.*, 2016 WL 936869, at *2). "Whether a particular change is material and substantial depends on the circumstances of each case." *Id.* (citing *In re A.J.M.*, 2016 WL 936869, at *2).

"[R]emarriage of a parent who has been appointed a conservator can constitute a material change of circumstances." *Id.* at *8 (citing *In re S.R.O.*, 143 S.W.3d 237, 244 (Tex. App.—Waco 2004, no pet.)); *see In re K.S.F.*, No. 05-21-01030-CV, 2023 WL 1501632, at *2 (Tex. App.—Dallas Feb. 3, 2023, no pet.) ("Some examples of material changes include . . . remarriage by a party . . . ."). Also, where, as here, a parent seeks to modify a child support obligation, a change in a parent's income can also constitute a material and substantial change. *See In re Y.E.*, No. 14-20-00608-CV, 2022 WL 364074, at *3 (Tex. App.—Houston [14th Dist.] Feb. 8, 2022, no pet.) (mem. op.); *In re K.F.*, No. 02-18-00187-CV, 2018 WL 6816119, at *4 (Tex. App.—Fort Worth Dec. 27, 2018, pet. denied) (mem. op.) ("It was undisputed at trial that Father's income had significantly increased from 2013 to 2016 and thus had changed since the

Agreed Order. This fact alone is sufficient to establish a material and substantial change in his circumstances, permitting the trial court to modify the Agreed Order.").

Here, Amber testified that, since the 2018 agreed divorce decree, she had remarried and had a child with her new husband. As a result, A.B., L.B., and E.B. had a new stepfather and sibling. Both Amber and Matthew testified about substantial changes to their income. Amber said that her husband, an assistant produce manager at Albertson's, had a job offer in Maine to become a produce manager at Shaw's grocery store. Amber, who made $48,000.00 as a Texas middle school teacher, had a contract with a school in Maine that was going to pay her $77,200.00 to teach. Matthew testified that he made "around $17.50, $18.00 maybe" per hour in 2018 but was, at the time of trial, making $24.00 an hour.

We find that the record presented ample evidence to support the trial court's decision that the circumstances of the parties had materially and substantially changed since the entry of the 2018 agreed divorce decree. As a result, we conclude that the trial court did not abuse its discretion in making such a finding. *See In re T.I.*, 2021 WL 3669339, at *9 ("Since some evidence of a substantive and probative character exists to support the trial court's decision, we find that the trial court did not abuse its discretion by finding that a material and substantial change had occurred sufficient to warrant its ordered modifications."). Accordingly, we overrule Matthew's first point of error.

6

**III.    Sufficient Evidence Showed that Relocation Was in the Children's Best Interests**

**A.    Relevant Factors**

The Texas Family Code does not list the factors to be considered by the trial court in its determination of a child's best interest in a modification proceeding. With respect to relocation, "[g]enerally, courts have moved 'from a relatively strict presumption against relocation and toward a more fluid balancing test that permits the trial court to take into account a greater number of relevant factors.'" *In re N.W.C.*, No. 05-21-00882-CV, 2023 WL 355176, at *2 (Tex. App.—Dallas Jan. 23, 2023, no pet.) (mem. op.) (quoting *Lenz v. Lenz*, 79 S.W.3d 10, 14–15 (Tex. 2002)). "Increasing geographic mobility and the availability of easier, faster, and cheaper communication have in part accounted for this shift in perspective." *Lenz v. Lenz*, 79 S.W.3d 10, 15 (Tex. 2002). "There is 'no bright-line test,' however, because determining whether relocation is in a child's best interest is 'intensely fact driven.'" *In re N.W.C.*, 2023 WL 355176, at *2 (quoting *Lenz*, 79 S.W.3d at 19).

"In *Lenz*, the [Texas] supreme court . . . identified a number of factors that may help give meaning to the best-interest standard in the context of relocation." *Id.* (citing *Lenz*, 79 S.W.3d at 15–16, 19). Those non-exhaustive factors are:

> the reasons for and against the move; education, health, and leisure opportunities afforded by the move; accommodation of the child's special needs or talents; the effect on extended family relationships; the effect on visitation and communication with the noncustodial parent; the noncustodial parent's ability to relocate; and the child's age.

7

*Id.* (citing *Lenz*, 79 S.W.3d at 15–16). We may also employ relevant *Holley*[2] factors and are guided by imperatives to:

> (1)    assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
>
> (2)    provide a safe, stable, and nonviolent environment for the child; and
>
> (3)    encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

*Lenz*, 79 S.W.3d at 14 (citing TEX. FAM. CODE ANN. § 153.001(a)).

## B.    The Evidence at Trial

At the time of trial, the boys were ten, eight, and six years old. Amber testified that she sought to move the children to Brunswick, Maine, so that she could better support her children financially. She testified that she would be making $30,000.00 more in Maine than in Texas and that her husband would also be receiving a promotion. Amber visited the schools in Maine and said that they had approximately half of Texas's "student-to-teacher ratio" and that they were also better rated. She said that the schools in Maine offered many extra-curricular activities the children were interested in, including hockey and skiing. Amber was looking forward to leisure activities with the children, including visiting nearby islands and lighthouses, going deep-sea

---

[2]The *Holley* factors are:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals. . . ; (G) the stability of the home. . . ; (H) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*In re A.B.O.*, 2015 WL 2236593, at *7 (quoting *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (citations omitted)).

fishing, and participating in community activities and festivals in both Brunswick and nearby Portland. She testified that the boys shared a bedroom in Texarkana, but where she planned to live in Maine, the house had a bedroom for each child.

According to Amber, she discussed her plans to relocate with Matthew in the summer of 2021, and they "talked about [Matthew] moving up to Maine." Matthew worked for Quality Petroleum as a "backup" driver and was "around the assistant manager level." He agreed that he "did seriously think about" moving to Maine but decided against it. On April 10, 2022, Matthew informed Amber that he was not going to move because "he didn't want to take the risk of losing" "a friend of his named Katie." Matthew clarified that, even though he no longer had contact with Katie, he was no longer interested in moving. Even so, Matthew agreed that, with the extra income in Maine, Amber could afford to the take the children on their first vacation since their divorce.

Amber told the trial court that she had a good friendship with Matthew, "couldn't ask for a better dad for [her] boys," and did not wish to take the children away from him but only wanted "a better life for [the children]." Amber testified that the children could spend all holidays and summers with Matthew and that "his biggest objection . . . was he didn't have a babysitter" to watch them while he was working. Amber also offered to pay for the children's transportation to Matthew and agreed to fly Matthew to Maine "either in March or in October" for a long weekend. Amber testified that that would allow Matthew more visitation than the schedule in the agreed divorce decree. She also said that the children would "Facetime" Matthew when they were not physically with him.

Amber said that insurance for the boys in Maine would cost $200.00 less than what it cost in Texas. She testified that her youngest son's "paralysis of his intestines" required drives from Texarkana to Dallas or Little Rock, Arkansas, but would only require a twenty-minute drive from Brunswick to Portland, which had a "highly recommended pediatric gastroenterologist."[3] Amber also testified that her oldest son was in therapy for being bullied in Texarkana.

Matthew testified that it would be in the children's best interests to remain in Texas, stating, "[A]ll my family is here. Her family is here. They have aunts, uncles, grandparents here." Matthew also felt that it would be in his children's best interests to see him regularly.

### C. Analysis

The evidence at trial showed that Amber wished to move to increase her family's financial security to better provide for her children. Amber testified, and Matthew did not contest, that Maine had better rated schools with a twelve-to-one student-to-teacher ratio versus Texas's twenty-four-to-one ratio. Amber testified about extracurricular activities that the children were interested in and the leisure activities she would enjoy with them in Brunswick and Portland. She also testified that her youngest son required specialized medical treatment that was more easily accessible to him in Maine and implied that her older son might get relief by moving away from his Texas bullies. Amber also testified that she would afford Matthew a visitation schedule that was more generous than the one currently specified by the agreed divorce decree.

---

[3]Amber testified that Matthew had violated the agreed divorce decree by failing to carry insurance on the children as ordered.

Matthew agreed that the move to Maine would provide Amber with more financial stability, but he testified that it was not in the best interests of the children because they would not get to see him or their extended family in Texas as often as they currently did.

In light of the evidence, the trial court could have found that, even after a move to Maine, (1) Amber would assure that the children had frequent and continuing contact with Matthew, (2) both parents would provide the children with a safe and stable environment, and (3) both parents would share in the rights and duties of raising their children. The trial court could have reasoned (1) that Matthew would have more access to the children under Amber's plan than in the agreed divorce decree, (2) that the children would be free to videochat with Matthew and other Texas family members anytime, and (3) that they would enjoy their holidays and summers with Matthew and their family members in Texas. It also could have found that nothing hampered Matthew's ability to relocate to Maine if he wished to do so, that the children would enjoy better schools and health care in Maine, and that the children would generally be afforded a better life due to the change in Amber's financial circumstances if they were allowed to move.

After weighing the *Lenz* and other relevant factors, we conclude that the trial court had sufficient evidence upon which to exercise its discretion and did not act in an unreasonable or arbitrary manner or without reference to any guiding principles by finding that the move to Maine would be in the children's best interests. As a result, we overrule Matthew's last point of error.

## IV.     Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     August 16, 2023
Date Decided:       August 24, 2023